### FARMERS BANK v. BRADHAM *ET AL.*

#### (123 S. E., 835)

FRAUDULENT CONVEYANCES—JUDGMENT DEBTOR'S DEED TO HIS WIFE TO DEFEAT COLLECTION OF EXPECTED DEFICIENCY JUDGMENT SET ASIDE. —A deed from judgment debtor to his wife made to prevent a creditor bank from collecting its expected deficiency judgment will be set aside in a proceeding by bank after it had secured such a judgment and a return of *nulla bona* had been made.

Before MEMMINGER, J., Williamsburg, December, 1923. Reversed and remanded.

Action by the Farmers Bank against J. J. Bradham and wife. From the judgment rendered plaintiff appeals.

The report of Referee F. R. Hemingway follows:

Pursuant to an order of reference in the above-stated case, signed by his Honor, Judge John S. Wilson, and dated the 1st day of August, 1923, to me directed, I held a reference in Kingstree, S. C., on the 29th day of August, 1923, and took the testimony which is herewith reported, and which is hereby made a part of this report.

The admitted facts in the case are these:

On October 13, 1920, the defendant J. J. Bradham borrowed from the plaintiff, the Farmers, Bank, the sum of $3,000, and as evidence thereof executed to it his two collateral promissory notes, each in the sum of $1,500, one to become due and payable on December 1, 1921, and the other

to become due on December 1, 1922. As security for the payment of these notes Mr. Bradham pledged to the bank 10 shares of stock in the Farmers Bank, of the par value of $1,000 and a mortgage covering 61½ acres of land owned by him in addition to the tract of land described in the complaint in this action, which mortgage was on its face given to secure the payment of the two notes mentioned. The first note for the sum of $1,500 became due and payable on the 1st day of December, 1921, and was not then paid.

By his deed bearing date June 13, 1922, the defendant J. J. Bradham conveyed to his wife and codefendant, Louise Annie Bradham, the tract of land described in the complaint, the same being his home place where he and his wife dwelt together, the consideration expressed in the deed being the sum of $10 and love and affection.

On December 1st, 1922, the second note for the sum of $1,500 became due and payable and the same was not then paid. With the maturity of this note the entire indebtedness from Mr. J. J. Bradham to the Farmers' Bank was due and unpaid.

Subsequent to the maturity of the said notes the bank stock put up as security was sold by the bank for the sum of $1,000, and that amount credited upon the notes and mortgage. On February 16, 1923, the plaintiff commenced an action in the Court of Common Pleas for the County of Williamsburg, against the defendant J. J. Bradham for the the foreclosure of the mortgage, asking for deficiency judgment in the matter, should the mortgaged premises when sold not bring enough to pay the judgment secured against the defendant. Judgment by default was entered against the defendant J. J. Bradham. The mortgaged premises sold for the sum of $1,200. The sum of $1,146.95 was credited upon the judgment, this sum being the net proceeds of the sale, leaving a balance due on the judgment of the sum $1,280.18. Execution was then issued against the property of the defendant J. J. Bradham, on May 13, 1923, and the

same was returned to the Clerk of this Court in due time by the Sheriff with a *nulla bona* return marked thereon, all of which appears by the judgment roll in this action marked Exhibit A, and by the testimony in the case.

The present action was commenced by the plaintiff, the Farmers Bank, against the defendants in this action, in June, 1923, to set aside the deed of conveyance executed by the defendant J. J. Bradham, of date June 13, 1922, to his wife and codefendant, Louise Annie Bradham, and to subject the land described in the deed to the payment of the amount due on the judgment secured against the defendant J. J. Bradham. After the service of the summons and complaint in this action both of the defendants filed their separate answers in this Court. On motion of the plaintiff's attorneys his Honor, Judge John S. Wilson, passed an order dated August 1, 1923, striking out certain portions of answer of the defendant J. J. Bradham. The parts of the answer stricken out are not herein considered, but only those parts that remain make the issues in this case.

In Paragraph IX of the complaint in this action this alleged that the lands were at the time of the conveyance and are now worth the sum of $3,000, that the deed was and is purely voluntary, and without consideration, or adequate consideration, and was fraudulently made and executed by the defendant J. J. Bradham to his wife, Louise Annie Bradham, with the intent and purpose to hinder, delay, defraud, and prevent the plaintiff from collecting the amount due to it by the defendant J. J. Bradham, and that Louise Annie Bradham knew of and participated in the fraudulent purpose and intention of the defendant J. J. Bradham.

Paragraph X and XI of the complaint in this action allege that the said conveyance reduced the assets of the said J. J. Bradham to such an extent as to render him wholly insolvent; that the amount due on the said judgment remains wholly unpaid and unsatisfied, and the plaintiff is and will continue to be unable to enforce payment thereof unless the

deed of conveyance executed by the defndant, J. J. Bradham to the defendant Louise Annie Bradham shall be declared fraudulent and void as to it, and the land conveyed thereby subjected to the payment of the amount due on the said judgment.

The defendants both deny the above paragraphs of the complaint, and both set up as a defense that at the time of the conveyance of the land in question from the defendant J. J. Bradham to his wife and codefendant, Louise Annie Bradham, the debt owing from the deefndant, J. J. Bradham to the plaintiff, the Farmers' Bank, was fully and amply secured, and, being so secured, was not such a debt as would void the deed from J. J. Bradham to his wife, Louise Annie Bradham, or make it a voluntary conveyance.

This action is one based upon common law, and upon the statute commonly known as the Statute of Elizabeth. Section 5218, Vol. 3, Code, S. C., 1922. Under this section the remedy is given against any one who attempts by deed of conveyance or any other means denounced by this section to "defraud creditors, and others of their just and lawful actions, suits, debts, accounts, damages, penalties, and forfeitures."

First let us see whether or not the bank is such a creditor of J. J. Bradham as will bring this case under the common law and the statute applicable to cases of this nature. We find from the evidence that the defendant J. J. Bradham was at the time of the conveyance of the land to his wife, Mrs Louise Annie Bradham, indebted to the plaintiff bank in the sum of $3,000, secured, of course, by $1,000 worth of the bank's stock, and the mortgage covering 61½ acres of land. The testimony of the cashier of the bank, the testimony of Mr. Gamble, the president of the bank, and the testimony of Mr. and Mrs. Bradham all go to show that the bank was urging Mr. Bradham to pay this loan to the bank, and that he could not do so, was unable to raise the money, but desired more time in which to raise the money and ar-

range payment of at least a part of the loan.     Just after this, as the testimony shows, Mr. Bradham conveyed the home tract of land on which he and his wife dwelt together to his wife for the express consideration of the sum of $10 and love and affection.     Mr. Bradham knew, and the testimony shows that Mrs. Bradham knew, that he owed the bank this money.     He knew that the bank would in all probability foreclose its mortgage if the notes were not paid, and knew, or should have known, as the knowledge is imputed to him, that upon failure of the security to satisfy the judgment execution would be issued against him or his property to collect the balance remaining due and unpaid on the judgment secured against him.

The rule is thus laid down:     "The term 'creditors, as employed in the statutes and decisions concerning fraudulent and voluntary conveyances, is not used in any narrow or technical signification, but includes all persons whose interests might be defrauded by the transfer."     14 Am. St. Rep., 739, at page 743.

It is contended by the attorney for the defendants that the bank was fully and amply secured and being such secured creditor, was not entitled to the protection afforded by the common law and the statute.     It is true that the bank was a secured creditor of the defendant J. J. Bradham, but the evidence does not show to my satisfaction that it was amply and fully secured, nor does it appear in the testimony at any place that the bank knew of or acquiesced in the conveyance of the tract of land from Mr. J. J. Bradham to his wife. Had the bank been consulted about the conveyance and given its consent, it would place the case on a different footing, but this is aside from the issue, owing to the fact that it had no knowledge of the conveyance.

The plaintiff's legal remedy to collect the amount due to it by the defendant J. J. Bradham on the secured account is well recognized in law, and is laid down in our Code of Procedure (2 Code S. C., 1912, Subd. 7, § 218).     The

judgment roll introduced into evidence and the testimony all show that the plaintiff followed its legal remedy as far as it could—in fact, followed it to the end and exhausted it—yet the defendant J. J. Bradham is still indebted to it in a considerable sum.  I do not know of any authority of law in this state that would prevent a secured creditor, after having exhausted his legal remedy to collect the debt owing to him from the security offered, from collecting the balance due out of the residue of the debtor's property, if the debtor has any property out of which collection could be enforced.  If, then, a creditor can collect out of other property of the debtor on a secured obligation, he could certainly follow the debtor's property in case the debtor has made a voluntary conveyance and proves insolvent, and I know of no rule to the contrary.  *Izard v. Middleton,* Baily, Eq., 228, see page 239; 27 C. J., 457.  *Allen v. Pierce,* 163 Ala., 612; 50 South., 924; 136 Am. St. Rep., 92.  *Spooner v. Travelers' Ins. Co.,* 76 Minn., 311; 79 N. W., 305; 77 Am. St. Rep., 651.  *Fidelity Mortgage Bond Co. v. Morris,* 191 Ala., 318; 68 South., 153, Ann. Cas., 1917C, 952, and note.

We must therefore conclude that the bank was such a creditor of Bradham as to bring this case under the common law and the statute applicable to cases of this nature, and that the conveyance mentioned in the complaint in this action might be attacked on the grounds of being voluntary and fraudulent conveyance, and set aside if found to be such. 14 Am. St. Rep., 739; 12 R. C. L., 492; 12 R. C. L., 500; 27 C. J., 472.

It is evident that to avoid a deed under the statute under which plaintiff brings its action it is only necessary to show either that the deed was without consideration or that it was made in bad faith by both parties thereof.  *Lenhardt v. Ponder,* 64 S. C., 354; 42 S. E., 169.  *McElwee v. Kennedy,* 56 S. C., 154; 34 S. E., 86.  The rule is that, in "transactions between relatives, such as husband and wife, it is very plain that such relation being proven they are re-

quired to give 'the fullest, clearest and most satisfactory evidence of good faith on the part of the parties concerned before it [the deed] could be sustained.'" *Tucker v. Weathersbee,* 98 S. C., 402; 82 S. E., 668.

As to the consideration paid in this matter, it is shown by the evidence that the land in question, known as the Bradham home tract, was worth $5,000, or at least $4,000, and that Mr. J. J. Bradham conveyed the same to his wife at a time when he was indebted to the bank, for the express consideration of the sum of $10 and love and affection. The testimony of both Mr. and Mrs. Bradham shows that the consideration in the deed was the help that Mrs. Bradham had given to Mr. Bradham all during their married life. Mrs. Bradham had assisted her husband in every way that she possibly could to help him to get ahead in the world and to acquire the land of which they were possessed; all of the property being in Mr. Bradham's name, however. Mrs. Bradham says in her testimony along this line: "I paid him cash a $10 bill, and that is all I did pay in money except a hard long life work for him." The testimony further shows that these two people had married when they were very poor, they began life possessed of little of this world's goods, living upon a rented place, and that by dint of hard work and good management they had acquired at different times the tract of land upon which the mortgage was placed and the tract of land mentioned in the complaint in this action. Notwithstanding the fact that Mrs. Bradham had always claimed as her own the tract of land upon which their home was situated, the title had always remained in the name of her husband, the defendant J. J. Bradham, until the deed of conveyance dated June 13, 1922, which deed is the subject of this action. Had not Mr. Bradham been thus indebted to the bank it would have been perfectly proper and right for him to have conveyed the tract of land in question to his wife; but such is not the case, and, proceeding upon the theory that one must be just before he is generous, it

would have been befitting for them to have paid the bank all that Mr. J. J. Bradham owed it before attempting to enjoy the fruits of their long years of labor.   Mrs. Bradham had often, it is true, expressed a desire to have the land placed in her name, but no steps were ever taken to comply with her request until at such time as Mr. Bradham was confronted with the situation that is outlined herein above. The testimony does not show that Mrs Bradham had ever made any money of her own, and that she did not own any property in her own name, and that she did not contribute any more towards the purchase of the tract of land in question than any other dutiful wife does, or should do under similar circumstances.   All that she did was in the nature of personal services, rendered in the capacity of wife and helpmeet, for her husband and for herself, for their mutual benefit, which is not a sufficient consideration to support this deed, which was given while the defendant J. J. Bradham was indebted to the bank, and which conveyance left him without means to complete his payment to it of what he justly owed, and which left the plaintiff bank without its legal remedy to enforce collection.   *Miller v. Wroton,* 82 S. C., 97; 63 S. E., 62; 449; 27 C. J., 560, 561, and notes.

On the question of bad faith, it is well understood that there are existing in law two kinds of fraud, legal and moral. We need not impute bad motives to exist in the hearts and minds of Mr. and Mrs. Bradham; their integrity and character may be beyond reproach.   We cannot inquire with minute precision into the motives that prompted these people to make the conveyance, but we are at liberty to judge their conduct by outward appearances.   In this view of the question we can proceed, and must proceed upon the legal principle long laid down and often followed, that "even where there is not the slightest taint of actual or moral fraud in the transaction, the law requires that one must be just before he is generous, and will not permit one who is indebted at the time to give his property away provided such gift proves

prejudicial to the interest of existing creditors." *Jackson v. Lewis,* 34 S. C., 6; 12 S. E., 560. The testimony shows that Mr. Bradham was worried about the loan by the bank; that he consulted his preacher concerning his affairs, and was advised by his preacher to take the course that was pursued by him. Mrs. Bradham knew about the loan from the bank to Mr. Bradham, knew that the bank was pressing Mr. Bradham for payment of the past-due note, and was anxious for Mr. Bradham to make her a deed for the land. Mr. Bradham then goes to Manning to have the deed prepared for him, goes to Kingstree, executes the deed there and has the same recorded, and then carries it home to his wife, who gives him a $10. bill for consideration, and Mrs. Bradham's knowledge or imputed knowledge of all these facts and circumstances all go to show that bad faith existed between Mr. and Mrs. Bradham in the execution of this conveyance. The circumstances are certainly more than enough to cast suspicion upon the circumstances of the conveyance, and to my mind show that bad faith was one of the prompting motives of the transaction. *Braffman v. Glover,* 35 S. C., 431; 14 S. E., 935. *Tucker v. Weathersbee,* 98 S. C., 402; 82 S. E., 638. *Fewell v. Hall,* 101 S. C., 238; 85 S. E., 590; 90 Am. St. Rep., 497; 27 C. J., 548, note F, South Carolina rule. The deed must therefore be considered as a voluntary conveyance, for want of consideration, and on account of the circumstances surrounding the transaction, which show bad faith, and must be considered fraudulent as to the existing creditor.

Plaintiff's attorney at the reference in this case objected to the introduction by the defense of any evidence as to the value of the land which the defendant J. J. Bradham had mortgaged to the bank as being incompetent and irrelevant. The pleadings in the case show that the defense relied in part upon the ground that the debt was fully and amply secured; their defense being thus set up in their respective answers, they had a right to introduce testimony to support

the allegations of their answers if they could. In this instance I do not see that this evidence is at all prejudicial to the interests of the plaintiff, and for these reasons I will allow the evidence introduced by the defense on this point.

I therefore conclude, find and hold:

(1) That the plaintiff is a judgment creditor of the defendant J. J. Bradham, to the extent of $1,280.18, with interest thereon at 7 per cent. from the 11th day of May, 1923.

(2) That the plaintiff was an existing creditor of the defendant J. J. Bradham at the time he executed the deed in question to his wife and codefendant, Louise Annie Bradham.

(3) That the deed of conveyance mentioned in the complaint was and is without any valuable consideration, and for that reason alone is fraudulent and void as to the plaintiff.

(4) That the deed of conveyance mentioned in the complaint was executed by the defendant J. J. Bradham to his wife, the defendant Louise Annie Bradham, at a time when he was being pressed by the plaintiff for the payment of an obligation due by him to the plaintiff; that his wife knew of all the facts and circumstances in connection therewith, and participated in the transaction by accepting the deed from him, and that the deed was therefore made and executed in bad faith by both the defendant J. J. Bradham and his wife, the defendant Louise Annie Bradham, and for this reason is fraudulent and void as to the plaintiff.

(5) That the deed of conveyance executed by J. J. Bradham to his wife, Louise Annie Bradham, on the 13th day of June, 1922, of record in the office of the Clerk of Court of Williamsburg County in Deed Book A-17, at page 80, should be declared null and void as to the plaintiff, and the land described in the said deed of conveyance be subjected to the payment of the amount due to the plaintiff by

the defendant J. J. Bradham on the judgment mentioned in the complaint. All of which is respectfully submitted.

*Messrs. Lee & Shuler,* for appellant, cite: *Equitable claim of Mrs. Bradham cannot prevail against claim of bank:* 82 S. C., 27. *In deed from husband to wife evidence of good faith must be shown by satisfactory evidence:* 98 S. C., 402; 101 S. C., 338. *Insufficient consideration:* 112 S. C., 275; 112 S. C., 279; 57 S. C., 280; 12 R. C. L., 478; 592. *Unrecorded agreement void as against bank:* 82 S. C., 97; 27 C. J., 560; 14 A. L. R., 1004. *Agreement to pay wife for services void as against creditors:* 27 S. C., 425; 35 S. C., 298; 28 S. C., 188; 34 S. C., 504. *Wife cannot demand compensation for marital duties:* 13 R. C. L., 1089; 45 Am. Rep., 160; 27 C. J., 560; 20 Cyc., 554; 12 R. C. L., 516. *Gift by husband to wife invalid against creditors:* 13 R. C. L., 120; 45 Am. Rep., 160; 11 Am. Rep., 711; 59 A. S. R., 243. *Wife entitled to separate income earned from others:* 13 R. C. L., 1093; 38 A. S. R., 287; 20 Am. Rep., 353. *Services of wife to which husband is entitled:* 30 C. J., 521. *Deed to defeat creditors void even though based on valuable consideration:* 64 S. C., 354; 56 S. C., 154; 105 S. C., 86. *Where security proves insufficient creditor may sue to set aside fraudulent conveyance:* 27 C. J., 472; 12 R. C. L., 500; 14 A. S. R., 739; Ann. Cas., 1917-C 952; 77 A. S. R., 651; 136 A. S. R., 92; 8 S. C. Eq., 238.

*Mr. Philip H. Stoll,* for respondent, cites: *Secured creditor cannot set aside deed to other property:* 27 C. J., 498.

July 15, 1924.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

An extended and detailed statement of the facts of this case is unnecessary, in view of the report of the special referee. Let it be reported.

The respondent J. J. Bradham, in October, 1920, borrowed from the appellant bank $3,000, and gave his two notes for $1,500 each, one due on the 1st of December, 1921, and the other due on the 1st of December, 1922. These notes were secured by an assignment of 10 shares of the capital stock of the appellant bank and a mortgage of 61½ acres of land. The note due in 1921 was not paid, and the respondent was very much worried about it. He had another tract of land on which he lived, known as his home place. After consultation with others, or another the respondent, on the 13th of June, 1922, made a deed of the home place to his wife, his codefendant, for $10 and love and affection. The second note was not paid. The bank sold the bank stock and foreclosed its mortgage and took a judgment for a deficiency for $1,280.18. There was a return of *nulla bona,* and this action to set aside the deed for fraud was brought.

There was no attack upon the legality or *bona fides* of the sale of the bank stock, or the mortgage upon the land. It is true the respondent seeks to bolster up the morale of his case by saying that the mortgaged premises sold for less than their real value, but as a matter of law there is a judgment for deficiency for more than $1,280.18, and a *nulla bona* return. Mr. Bradham says that he thought that the notes were amply secured. He does not try to explain the conveyance after his first note was due and unpaid, and the approaching maturity of the second note. He admits that he saw no reasonable hope of paying either.

It is claimed that there is a great moral reason for the conveyance, to wit: When the defendants, the grantor and grantee, were married, they were poor and had labored hard and side by side to make and save money that bought the home place, and that she is entitled to something for these 30-odd years of labor. Mrs. Bradham says that she always claimed that she should have the title to the home place, but she did not get it until her husband was in financial trouble.

There is no evidence that Mr. Bradham agreed to convey it to her until the disaster was imminent. There is no evidence that Mr. Bradham agreed to pay her for the services which she rendered to him as a good wife. There is certainly no evidence that the bank had any notice that she would or had made such a claim. There is no law in this State that gives to the wife one-half of the property accumulated during the coverture. But, even if we are to decide this case by the moral principles claimed, Mrs. Bradham claims too much. It is not denied that the home place is worth at least $5,000, and, if one-half of that amount is to go to Mrs. Bradham, then there is enough of his interest to pay the plaintiff's debt and leave Mrs. Bradham her moral claim of $2,500. The trial Judge sustained the deed mainly on this moral principle. Mrs. Bradham claims the whole. It is manifest that even on the moral principle this deed cannot be sustained. We must decide this case according to law. It is very manifest that this deed was made to defeat the creditor bank in the collection of its expected judgment for deficiency, and is therefore void as to the bank.

The judgment appealed from is reversed, and the case is remanded to the Court of Common Pleas for Williamsburg County for the proper orders.

MESSRS. JUSTICES WATTS, COTHRAN and MARION, concur.

MR. JUSTICE COTHRAN: I concur. See *Jenkins v. Clement,* Harp. Eq., 72; 14 Am. Dec., 698. *Hudnal v. Wilder,* 4 McCord, 294; 17 Am. Dec., 744. *Blake v. Jones,* Bailey, Eq., 141; 21 Am. Dec., 530. *Eigleberger v. Kibler,* 1 Hill, Eq., 113; 26 Am. Dec., 192; 12 R. C. L., 592.

MR. CHIEF JUSTICE GARY did not participate.